1
2
3
4
5
6                    **IN THE UNITED STATES DISTRICT COURT**
7                      **FOR THE DISTRICT OF ARIZONA**
8
9    Tyrone James Sam,                        No. CV-14-08215-PCT-JAT (BSB)
                                                  CR-12-08176-PCT-JAT
10                     Movant/Defendant,
                                               **REPORT AND**
11   v.                                        **RECOMMENDATION**

12   United States of America

13                     Respondent/Plaintiff.

14   _____

15           Movant/Defendant Tyrone James Sam (Movant) has filed a Motion to Vacate, Set

16   Aside, or Correct Sentence by a person in Federal Custody pursuant to 28 U.S.C. § 2255.

17   (Doc. 1.)[1]  Respondent/Plaintiff, the United States of America (the government), has filed

18   a response asserting that the § 2255 motion should be denied.  (Doc. 4.)  Movant has filed

19   a reply in support of his motion.  (Doc. 17.)  For the reasons set forth below, the Court

20   recommends that the § 2255 motion be denied.

21   **I.      Factual and Procedural Background**

22           **A.      Factual Background**

23           The events giving rise to Movant's conviction, summarized below, are set forth in

24   the plea agreement and the Presentence Investigation Report (PSR).  (Doc. 10, Ex. A at

25   5-6; Doc. 12, Ex. B.)[2]  On July 6, 2012, nine-year-old Jane Doe (the victim), her mother,

26   _____

27           [1]    Citations to "Doc." are to the docket in CV-14-08215-PCT-JAT (BSB).
     Citations to "CR Doc." are to the docket in the underlying criminal case, CR-12-08176-
28   PCT-JAT.

             [2]  The PSR and the draft PSR are filed under seal as Exhibits B and I at docket 12.

and her siblings spent the night at her grandmother's house in Hunter's Point, Arizona. Hunter's Point is in the Navajo Indian Reservation.  The victim and her siblings slept in the living room.  The victim's mother slept in a bedroom.  (Doc. 12 , Ex. B, at ¶ 3.) Around 1:00 a.m. on July 7, 2012, the victim's grandmother picked up Movant from work and took him to her house.  (Doc. 19, Ex. A at 5.)

While the victim was sleeping, Movant picked her up and put her on his lap.  (*Id.*) He then covered them both with a blanket.  (*Id.* at 6.)  Movant pulled down his pants and underwear.  (*Id.*)  He also pulled down the victim's pants and underwear.  (*Id.*)  Movant then touched the victim's buttocks and the outside of her upper thigh with his hands and his penis.  (*Id.*)  The victim tried to call to her family, but Movant covered her mouth with his hand.  (*Id.*)  The victim started to cry and her mother entered the living room. (*Id.*)  At that point, Movant jumped up, while his pants and underwear were still around his ankles.  (*Id.*)  The victim's pants and underwear were also still pulled down.  (*Id.*)

The Federal Bureau of Investigation (FBI) interviewed the victim's uncle. (Doc. 10, Ex. C.)  He was sleeping in the living room the night of the incident.  He described hearing a voice say, "don't."  (*Id.* at 2.)  He also heard one of the girls crying and heard Movant say "shhhh."  (*Id.*)  He saw Movant on the couch "with the two girls," but it was too dark for him to tell what was happening.  (*Id.*)  He got up to confront Movant at the same time the victim's mother entered the room.  (*Id.*)  The victim's uncle saw that Movant's pants were open and his belt buckle was undone.  (*Id.*)  He estimated that these events took place around 5:00 or 6:00 a.m.  (*Id.*)

The victim was interviewed by a child forensic interviewer.  (Doc. 12, Ex. B at ¶ 4.)  She told the interviewer that Movant "tried to put his thing in me."  (*Id.*)  She also said that Movant showed her money to prevent her from telling the police what happened.  (*Id.*)  The victim's siblings were interviewed and gave the same account as the victim.  (Doc. 12, Ex. B at ¶ 6.)  The victim's mother took her to the hospital to be examined.  (*Id.* at ¶ 3)  During a sexual assault examination, the victim's body was swabbed in a few locations for the presence of DNA.  (Doc. 10, Ex. D.)  The swabs were

sent to the FBI laboratory and examined for the presence of blood and semen.  (*Id.*) Analysis revealed the presence of male DNA on a swab from the victim's hip and a swab from her buttocks.  (*Id.*)  The government contacted Movant's attorney, Lorna Spencer, who stated that Movant would provide a DNA sample.  (Doc. 10, Ex. E.)  On December 20, 2012, Movant consented to a search, which entailed the collection of two buccal swabs to develop a DNA profile for comparison.  (*Id.*)  The DNA analysis report, dated January 10, 2013, excluded Movant as a contributor of the male DNA on the samples taken from the victim's hip and buttocks.  (Doc. 10, Ex. F.)

**B.     Charges, Guilty Plea, and Sentencing**

On July 31, 2012, Movant was indicted in the District of Arizona on one count of attempted aggravated sexual abuse of a child, in violation of 18 U.S.C. § 1153 and § 2241(c) (Count One), and one count of abusive sexual contact, in violation of 18 U.S.C. §§ 1153, 2244(a)(5), and 2246(3) (Count Two).  (CR Doc. 1.)

On February 6, 2013, Movant, represented by Lorna Spencer, participated in a change of plea hearing before Magistrate Judge Michelle H. Burns.  (Doc. 10, Ex. G.) During that proceeding, Movant entered a guilty plea to Count Two pursuant to a plea agreement.  (*Id.*)  The plea agreement stipulated that "the sentence imposed shall not exceed fifteen years imprisonment."  (*Id.* at 2.)  Magistrate Judge Burns found that Defendant was "competent to enter" a guilty plea, the "guilty plea [was] knowingly, intelligently, and voluntarily made," and was supported by a factual basis.  (Doc. 10, Ex. H at 17.)   Magistrate Judge Burns issued a Report and Recommendation recommending that the assigned district judge accept Movant's guilty plea. (CR Doc. 28.)   Approximately two weeks later, on February 19, 2013, Elizabeth Kruschek was substituted as counsel for Movant.  (CR Doc. 29.)

Movant's sentencing was set for April 29, 2013, and a draft presentence investigation report (draft PSR) was prepared.  (Doc. 12, Ex. I.)  The draft PSR calculated Movant's United States Sentencing Guidelines (U.S.S.G.) range as forty-six to fifty-seven months' imprisonment, based on a total offense level 21 and a criminal history

category III.  (Doc. 12, Ex. I at ¶ 50.)  The draft PSR reached this calculation using U.S.S.G § 2A3.4, abusive sexual contact, to determine the offense level.  (*Id.* at ¶¶ 12-13.)  However, the draft PSR did not apply the cross-reference in § 2A3.4(c)(1),which states "if the offense involved criminal sexual abuse or attempt to commit criminal sexual abuse, as defined in 18 U.S.C. § 2241 or § 2242, apply § 2A3.1, (criminal sexual abuse; attempt to commit criminal sexual abuse)."  *See* U.S.S.G. § 2A3.1.  The government objected to the draft PSR on that basis.  (CR Doc. 30.)

Following the government's objection, and before sentencing, the probation officer prepared the PSR and applied the cross-reference in §2A.34(c)(1), which resulted in a base offense level 30, with an additional four-level enhancement under § 2A3.1(b)(2) because the victim was under twelve years of age.  (Doc. 12, Ex. B at ¶¶ 12 and 13.)  The probation officer re-calculated Movant's Sentencing Guidelines range as 135 to 168 months' imprisonment, based on a total offense level 31 and a criminal history category III.  (*Id.*, Ex. B at ¶¶ 21 and 27.)  The probation officer recommended a sentence of 150 months' imprisonment followed by lifetime supervised release.  (*Id.* at 15, Sentencing Recommendation.)  The PSR noted that if Movant had been convicted of Count One of the indictment for attempted aggravated sexual abuse, he would have faced a mandatory minimum sentence of thirty years' imprisonment.  (*Id.*, Ex. B at ¶ 63.)

The court scheduled the sentencing hearing for April 29, 2013.  (CR Doc. 35.)  During that hearing, the district judge granted Kruschek's motion to withdraw as counsel and appointed Marc Victor to represent Movant.  (CR Docs. 35, 36.)  The district judge rescheduled Movant's sentencing to June 20, 2013, and then later rescheduled it to August 7, 2013.  (CR Docs. 36, 38.)  At the sentencing hearing, on August 7, 2013, the district judge rejected the February 6, 2013 plea agreement, but not Movant's guilty plea.  (CR Doc. 41; Doc. 10, Ex. J at 3-5.)  The district judge found that "there [was] no meeting of the minds" regarding Movant's sentencing exposure.  (Doc. 10, Ex. J at 2-3.)  The district judge explained that Movant "envisioned that he was entering into a plea agreement with a sentencing range of 37 to 46 months," and the government envisioned

that "considering relevant conduct, [the] case would justify a sentence in the range of 135 to 168 months . . . ." (Doc. 10, Ex. J at 4.) The district judge advised that if Movant "wish[ed]," he would set a status hearing to determine whether Movant "want[ed] to withdraw from his guilty plea." (*Id.*) The district judge explained that because he had rejected the plea agreement, Movant had "an absolute right to withdraw from his guilty plea," but if he chose not to do so, he would be sentenced on the guilty plea without the benefit of the plea agreement. (*Id.* at 5-6.)

Movant's counsel, Victor, stated that Movant had informed him that if the district judge rejected the plea agreement, he would withdraw from the guilty plea. (*Id.* at 9.) Victor asked for an opportunity to rework the plea agreement with the government. (*Id.*) The government explained that Movant "got a major benefit out of [the] plea agreement," because a conviction of attempted aggravated sexual abuse carried a mandatory thirty-year sentence," which Movant avoided by entering the plea agreement. (Doc. 10, Ex. J at 10.)

After hearing from counsel, the district judge reaffirmed his ruling rejecting the plea agreement, and stated that "the ball was in [Movant's] court as to whether he [was] going to withdraw his guilty plea or not." (*Id.* at 11.) The district judge indicated that he would give the government and Movant time to determine whether they would revise the plea agreement. (*Id.* at 11-13.) The district judge vacated the sentencing hearing and set a status conference on August 21, 2013 for Movant to advise the Court if he wanted to withdraw his guilty plea. (*Id.* at 11-13; CR Doc. 41.) The district judge indicated that if Movant elected to withdraw from his guilty plea, he would set the trial for September 17, 2013. (Doc. 10, Ex. J at 4.) At the August 21, 2013 status hearing, which Movant attended with attorney Victor, the district judge noted that Movant "need[ed] additional time to decide if he wishe[d] to withdraw his guilty plea and proceed to trial or consider the revised plea agreement." (CR Doc. 47.) Therefore, the district judge set another status hearing on August 27, 2013. (*Id.*)

On August 27, 2013, Movant pleaded guilty to Count Two pursuant to "a new plea agreement" (the revised plea agreement). (Doc. 10, Ex. K at 2; CR Doc. 53.) The district judge accepted Movant's guilty plea, finding that the guilty plea was "knowingly, intelligently, and voluntarily made and there [was] a factual basis for it." (Doc. 10, Ex. K at 17.) He also accepted the revised plea agreement. (*Id.*) In accordance with the terms of the revised plea agreement, the district court sentenced Movant to 135 months' imprisonment followed by lifetime supervised release. (*Id* at 27-33; Doc. 10, Ex. L.) On the government's motion, the district judge dismissed Count One of the indictment. (*Id.*)

**C.    § 2255 Motion**

On November 3, 2014, Movant filed a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. (Doc. 1.) Movant alleges that his attorneys were ineffective in violation of the Sixth Amendment. (*Id.*) Movant alleges two grounds for relief asserting that trial counsel was ineffective for (1) "for failing to defend him using available DNA evidence" (Doc. 1 at 22), and (2) "by presenting [him] with a plea agreement unnecessarily discarding fundamental constitutional rights without crafting an adversarial argument for [him] based on available and irrefutable evidence of [his] innocence." (*Id.* at 30.)

In its response, the government's counsel advises the Court that he contacted Movant's attorneys. (Doc. 10 at 5.) Kruschek and Victor declined to provide an affidavit related to Movant's claims. Although Spencer agreed to prepare an affidavit, the government had not received a statement by the time it filed its response to the § 2255 motion. (*Id.*) To date, the government has not supplemented the record with any statements from Movant's former attorneys. In his reply, Movant requests an evidentiary hearing. (Doc. 17.)

As set forth below, the Court finds that Movant's claims lack merit. The Court also finds that an evidentiary hearing is unnecessary. Therefore, the Court recommends that the motion be denied.

## II.      Ineffective Assistance of Counsel Claims

To obtain relief for a claim of ineffective assistance of counsel, a defendant must show both that counsel's representation fell below an objective standard of reasonableness, and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88, 692 (1984).  When reviewing counsel's performance, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment.  *Id.*  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

To establish a Sixth Amendment violation, a petitioner must also establish that he suffered prejudice as a result of counsel's deficient performance.  *Id.* at 691-92.  To show prejudice, a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  The court need not address both *Strickland* requirements if the petitioner makes an insufficient showing on one.  *See Strickland*, 466 U.S. at 697 (explaining that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."); *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) (stating that "[f]ailure to satisfy either prong of the *Strickland* test obviates the need to consider the other") (citing *Strickland*, 466 U.S. at 688).

The negotiation of a plea bargain is "'a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel.'"  *Missouri v. Frye*, ___ U.S. ___, 132 S. Ct. 1399, 1406 (2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 366, (2010)).  If counsel has misadvised a defendant about the law during a plea negotiation, or improperly coerced a defendant to accept a plea bargain, counsel's performance may be found deficient.  *See Lafler v. Cooper*, ___ U.S. ___, 132 S. Ct. 1376, 1384 (2012) (counsel's erroneous legal advice about possibility of conviction that led to rejection of plea offer constituted deficient performance).  "If a plea bargain has been offered, a

defendant has the right to effective assistance of counsel in considering whether to accept it." *Id.* at 1387. To satisfy *Strickland's* prejudice prong when a petitioner has pleaded guilty, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (citations omitted).

## III.   Ground One

In Ground One, Movant argues that trial counsel advised him to plead guilty without disclosing the DNA test results to him.[3] This testing excluded Movant as a contributor of the male DNA in the samples taken from the victim's body. (Doc. 10, Ex. F.) Movant asserts that trial counsel Spencer coerced him to "sign the plea agreement" on February 6, 2013, without providing him with the DNA test results, which were available in January 2013. (Doc. 1 at 15.) Movant asserts that if he had been aware of the DNA test results, he would have rejected the plea agreement and proceeded to trial. (*Id.* at 27.)

### A.   The Court Rejected the February 6, 2013 Plea Agreement

As an initial matter, the Court cannot grant relief based on claims related to the February 6, 2013 plea agreement because Movant was not convicted or sentenced based on that plea agreement. As previously discussed, on August 7, 2013, the district judge rejected the February 6, 2013 plea agreement. (Doc. 10, Ex. J.) Therefore, his conviction and sentence are not based on that plea agreement, he is not in federal custody based on that plea agreement, and there is no conviction pursuant to that plea agreement for the Court to set aside, even if trial counsel was ineffective in connection with that plea agreement. *See* 28 U.S.C. § 2255.

Moreover, assuming that Spencer's performance was deficient for failing to provide Movant with the DNA test results before he signed the plea agreement on February 6, 2013, Movant cannot establish that she was ineffective because he cannot

---

[3] Movant raises a similar claim that counsel was ineffective for advising him to plead guilty when the DNA evidence "exonerate[d] him." (Doc. 1 at 22.) Movant also raises this claim in Ground Two, as discussed in Section IV.

show prejudice.  *See Strickland*, 466 U.S. at 694.  Specifically, as set forth below, Movant's assertion that he would not have pleaded guilty if he had been aware of the DNA results is contradicted by the record in this case.

**B.     Movant Knew of the DNA Test Results When He Pleaded Guilty**

Movant states that the DNA test results "were made known to him" on April 25, 2013, after he pleaded guilty and entered a plea agreement on February 6, 2013.[4] (Doc. 17 at 3.)  However, Movant was present several months later at the August 7, 2013 hearing during which the district judge rejected the February 6, 2013 plea agreement. (Doc. 10, Ex. J at 2, 5.)  The district judge explained that because he had rejected the plea agreement, Movant had "an absolute right to withdraw from his guilty plea."  (*Id.* at 5-6.) He advised that if Movant "wish[ed]," he would set a status hearing to determine whether Movant "want[ed] to withdraw from his guilty plea."  (*Id.*)  Movant's counsel, Victor, stated that Movant had informed him that if the district judge rejected the plea agreement, he would withdraw his guilty plea.  (*Id.* at 10.)  Victor asked for an opportunity to rework the plea agreement with the government.  (*Id.*)

To allow the government and Movant time to try to revise the plea agreement, the district judge vacated Movant's August 7, 2013 sentencing and scheduled an August 21, 2013 status conference for Movant to advise the court if he wanted to withdraw his guilty plea.  (*Id.* at 12-13; CR Doc. 41.)  The district judge stated that if Movant elected to withdraw from his guilty plea, trial would be set for September 17, 2013.  (Doc. 10, Ex. J at 4.)  Thus, Movant had knowledge of the DNA test results when the February 6, 2013 plea agreement was rejected and when the district judge specifically advised Movant that he could withdraw his guilty plea and proceed to trial, or attempt to rework a plea agreement with the government.

During the August 21, 2013 status hearing, Movant's counsel Victor advised the district judge that Movant "need[ed] additional time to decide if he wishe[d] to withdraw

---

[4]   At that time, Movant was represented by Elizabeth Kruschek.  (CR Docs. 29, 36.)  A few days later, Victor became Movant's attorney.  (CR Docs. 35, 36.)

his guilty plea and proceed to trial or consider the revised plea agreement."
(CR Doc. 47.)  Therefore, the court set another status hearing for August 27, 2013.  (*Id.*)
At this point, Movant had been aware of the DNA test results for approximately four
months.  (Doc. 17 at 3.)  With knowledge of the DNA test results, on August 27, 2013,
Movant pleaded guilty to Count Two pursuant to a revised plea agreement.  (Doc. 10,
Ex. K at 2; CR Doc. 53.)  The district judge accepted Movant's guilty plea, finding that it
was "knowingly, intelligently, and voluntarily made and there [was] a factual basis for
it."  (Doc. 10, Ex. K at 17.)  He also accepted the revised plea agreement.  (*Id.*)

Movant states that he became aware of the DNA test results on April 25, 2013.
Thus, the record establishes that before Movant pleaded guilty pursuant to the revised
plea agreement on August 27, 2013, Movant was aware of the DNA test results.  After
the district judge rejected the February 6, 2013 plea agreement, he specifically advised
Movant that he could withdraw his guilty plea, and allowed Movant additional time to
consider that decision and additional opportunities to withdraw his guilty plea.
Nonetheless, Movant chose to plead guilty pursuant to the revised plea agreement on
August 27, 2013.  He was aware of the DNA test results for several months before
August 27, 2013, when he pleaded guilty and entered the revised plea agreement.
Considering this procedural history, the record does not support Movant's assertion that
he would have proceeded to trial if he had been earlier advised of the DNA test results.
(Doc. 1 at 27.)

### C.   Movant Was Not Coerced into Pleading Guilt

In Ground One, Movant also generally asserts that counsel was ineffective for
coercing him to plead guilty by improperly advising him of the sentencing range.  (Doc. 1
at 28.)  Movant does not attribute this alleged conduct to any particular attorney.  (*Id.*)
Moreover, Movant's claim is contradicted by his words and conduct at the August 27,
2013 plea hearing.

A defendant's plea colloquy is given great weight in determining whether the plea
was voluntarily and knowingly made.  *See United States v. Boniface*, 601 F.2d 390, 393

(1979.)  During the August 27, 2013 hearing, Movant acknowledged that he reviewed the plea agreement with counsel, and confirmed that he was not pressured to enter a guilty plea.  (Doc. 10, Ex. K.)  Movant confirmed that he had not had any substances that could interfere with his ability to understand the hearing.  (*Id.* at 3, 5-6.)  He stated that he was satisfied with counsel's representation.  (*Id.* at 7.)  Movant confirmed that he was voluntarily entering the plea agreement and that he was not "pushed or pressured" to do so.  (*Id.* at 9.)  Movant confirmed that he understood that he "d[id]n't have to enter into [the plea agreement] if he "d[id]n't want to."  (*Id.* at 9.)  The district judge confirmed that Movant had read the revised plea agreement, gone over it with counsel, and understood that agreement.  (*Id.* at 5, 9.)  Movant confirmed that he signed the revised plea agreement on August 27, 2013.  (*Id.* at 9.)  He confirmed that counsel explained "everything" in the revised plea agreement and that he "really didn't have any questions" about it.  (*Id.* at 9.)

The district judge confirmed that under the revised plea agreement, Movant was pleading guilty to Count Two of the indictment, charging him with abusive sexual conduct, in violation of 18 U.S.C. §§ 1153, 2244(a)(5), and 2246(3), a Class A Felony.  (*Id.* at 9-10.)  Movant agreed that he was pleading guilty to that crime.  (*Id.* at 9-10.)  The district judge explained the maximum statutory penalties for the offense to which Movant was pleading guilty.  (*Id.* at 10.)  Specifically, the "crime could carry with it a maximum fine of $250,000, a maximum term of imprisonment of life, or [he] could get both, and a term of supervised release of five years to life."  (*Id.*)  Movant confirmed that he understood his sentencing exposure if he went to trial on Count Two of the indictment.  (*Id.*)  The district judge explained that under the revised plea agreement, the court could impose a special assessment of $100 for each count of conviction.  (*Id.* at 10-11.)

The district judge further explained that under the revised plea agreement, Movant and the government stipulated that the "cross-reference" applied and that Movant would be sentenced to a term of imprisonment of 135 months, which is 11.25 years.  (*Id.* at 11-12.)  Movant indicated that he understood the stipulation.  (*Id.* at 12.)  The district judge

reiterated that if the court accepted the revised plea agreement, Movant would be sentenced to 11.25 years' imprisonment.  (*Id.*)  The district judge also discussed that Movant could be sentenced to a term of supervised release from five years to life.  (*Id.* at 10.)  Movant indicated that he understood his sentencing exposure under the revised plea agreement.  (*Id.*)

The district judge discussed the constitutional rights that Movant was waiving by pleading guilty and the government's burden if the case went to trial.  (*Id.* at 7-8, 12-13.)  Movant affirmed that he understood those rights and the government's burden and wanted to give up his rights and enter a plea of guilty.  (*Id.* at 7-8, 13.)  The district judge explained that Movant was also waiving his right to appeal and to bring a collateral attack.  (*Id.* at 15.)  Movant stated that he understood that waiver.  (*Id.* at 15-16.)

The district judge set forth the elements of the offense to which Movant was pleading guilty, and confirmed that Movant understood those elements.  (*Id.* at 12-13.)  The district judge read the factual basis that was set forth in the revised plea agreement.  (*Id.* at 13-14.)  Movant agreed with the factual basis, agreed that those facts were true, and agreed that the government could prove those facts beyond a reasonable doubt if the case went to trial.  (Doc. 10, Ex. K at 13-14.)

The district judge reiterated that Movant was charged with violating 18 U.S.C. §§ 1153, 2244(a)(5), and 2246(3), abusive sexual contact.  (*Id.* at 16.)  Movant then pleaded guilty to violating those provisions.  (*Id.* 16-17.)  Movant confirmed that he was "pleading guilty to this crime because [he was] guilty."  (*Id.* at 17.)  The district judge found that Movant's "plea [was] knowingly, intelligently and voluntarily made and that there [was] a factual basis for it."  (*Id.*)  The district judge accepted the plea and the revised plea agreement.  (*Id.* at 17-18.)

The court then proceeded to sentencing.  (*Id.* at 18.)  Movant confirmed that he had reviewed the PSR and the addendum with counsel and that he understood those documents.  (*Id.*)  The district judge discussed the objections to the PSR and resolved them.  (*Id.* at 19-22.)  The district judge approved the adjusted offense level of 34 and

granted the government's motion to subtract three levels based on Movant's acceptance of responsibility. (*Id.* at 22-23.)  Before imposing Movant's sentence, the district judge gave Movant the opportunity to address the court. (*Id.* at 23.)  Movant expressed remorse for the "wrong" that he had done, and "apologize[d] for the past hearings and all the time that [the court] wasted here in the courtroom seeing [him] over and over . . . ." (*Id.* at 23-24.)  Movant did not express any dissatisfaction with counsel's representation or indicate that he did not want to enter a guilty plea or the revised plea agreement. (*Id.*)  In accordance with the revised plea agreement, the district judge sentenced Movant to 11.25 years' imprisonment followed lifetime supervised release. (*Id.* at 27.)

Movant alleges that he would not have pleaded guilty if he had known the results of the DNA testing.  However, he pleaded guilty under the revised plea agreement several months after he was made aware of those results.  Additionally, during the August 27, 2013 hearing, Movant stated that he wanted to plead guilty, admitted the crime to which he was pleading guilty, and stated that he was not pressured to enter a plea.  "Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea."  *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008).  When, as here, a collateral challenge rests on allegations that contradict a movant's sworn statements, the Ninth Circuit has held that claim fails.  *See Muth v. Fondren*, 676 F.3d 815, 821-22 (9th Cir. 2012) (collecting cases and rejecting a movant's challenge to his guilty plea that was contradicted by his sworn statements during the change of plea hearing).

Because Movant pleaded guilty pursuant to the revised plea agreement several months after he became aware of the DNA test results, he cannot show that if counsel has earlier advised him of the DNA test results he would have rejected a plea offer and proceeded to trial.  Additionally, the record of the August 27, 2013 hearing contradicts Movant's unsupported allegations that he was coerced into pleading guilty.  Therefore,

1    Movant cannot establish a claim of ineffective assistance of counsel based on those

2    allegations.[5]

3    **IV.    Ground Two**

4          In Ground Two, Movant argues that counsel was ineffective for advising him to

5    enter a plea agreement that waived his fundamental rights "without crafting an

6    adversarial defense for [Movant] based on available and refutable evidence of [his]

7    innocence." (Doc. 1 at 30.)  Movant's claim is based on DNA evidence, witnesses, and

8    electronic evidence.  As set forth below, this claim lacks merit.

9          **A.     Advice to Plead Guilty Despite DNA Evidence**

10         Movant argues that counsel was ineffective for advising him to plead guilty when

11   the DNA evidence indicated that he was innocent of the charged crimes.  (Doc. 1 at 31.)

12   Because the district judge rejected the February 6, 2013 plea agreement and Movant

13   ultimately pleaded guilty under a revised plea agreement on August 27, 2013, the Court

14   construes this claim as alleging that trial counsel Victor was ineffective for advising

15   Movant to accept the revised plea agreement and plead guilty on August 27, 2013.  As set

16   forth below, Movant cannot establish that counsel was ineffective on this basis.

17         As set forth above in Section II, the Court applies *Strickland*, to claims of

18   ineffective assistance of counsel.   The Court first determines whether counsel's

19   representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S.

20   at 688.  "The first prong — constitutional deficiency — is necessarily linked to the

21   practice and expectations of the legal community: 'The proper measure of attorney

22   performance remains simply reasonableness under prevailing professional norms.'"

23   *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland*, 466 U.S. at 688.)  On

24   _____

25         [5]    Movant also suggests that Lorna Spencer was ineffective for failing to
     "immediately" seek DNA testing.  (Doc. 1 at 26.)  However, Movant does not explain
26   how this failure prejudiced him, and he cannot make this showing because DNA testing
     was obtained and revealed to Movant before he pleaded guilty pursuant to the revised
27   plea agreement on August 27, 2013.  To the extent Movant argues that Spencer was
     ineffective for advising him to enter the February 6, 2013 plea agreement, he cannot
28   establish prejudice because the district court rejected that plea agreement.  To the extent
     Movant's claim is directed at counsel Kruschek, his claim fails because she did not
     represent Movant at the time of his August 27, 2013 guilty plea.

the performance prong, the question is not what counsel might have done differently, but whether counsel's decisions were reasonable from counsel's perspective at the time. *Strickland*, 466 U.S. at 689. The reviewing court starts from a strong presumption that counsel's conduct fell within the wide range of reasonable conduct. *Id.* at 690. Movant has not shown that counsel performed deficiently by advising him to plead guilty despite the lack of a DNA match, because other evidence connected Movant to the alleged crimes and Movant benefitted under the plea agreement.

The record included the statements of several witnesses including the victim, her mother, her siblings, and her uncle that are discussed in Section I.A. In these statements, the witnesses gave similar accounts of the incident and identified Movant as the individual who engaged in the offense conduct. *See* Section I.A. Thus, although DNA testing excluded Movant as a match for DNA found on samples taken from the victim, there was other evidence from which a reasonable juror could have convicted Movant. Thus, counsel did not perform deficiently by advising Movant to plead guilty to the revised plea agreement.

Additionally, the revised plea agreement substantially benefitted Movant. Under the revised plea agreement, the government agreed to dismiss Count One of the indictment, which carried a thirty-year mandatory prison sentence. (Doc. 12, Ex. B at ¶ 63.) The revised plea agreement provided that Movant would plead guilty to abusive sexual contact in violation of 18 U.S.C. §§ 1153, 2244(a)(5), and 2246(3). (Doc. 10, Ex. A.) That crime carried a maximum fine of $250,000, a maximum term of imprisonment of life, or both, and a term of supervised release of five years to life. (Doc. 10, Ex. K at 10.) The PSR, which was prepared before Movant entered his guilty plea to the revised plea agreement, found that Movant's guidelines range was 135 to 168 months' imprisonment, and recommended a sentence of 150 months' imprisonment. (Doc. 12, Ex. B at ¶ 50, Sentencing Recommendation at 15.) The revised plea agreement stipulated to a less significant sentence. Specifically, the plea stipulated to term of 11.25 years' (135 months') imprisonment. (Doc. 10, Ex. A at 2.) Considering the potential

sentence Movant faced if he proceeded to trial, and the witnesses' statements connecting Movant to the charged offenses, counsel was not deficient in advising Movant to plead guilty despite the fact that Movant's DNA did not match DNA that was found on the victim.  Accordingly, Movant has not satisfied the first prong of the *Strickland* test and this claim of ineffective assistance of counsel fails.  *See Strickland*, 466 U.S. at 697.

**B.      Failure to Investigate Before Giving Plea Advice**

Movant also argues that trial counsel was ineffective for advising him to enter a guilty plea without having investigated other evidence that supported Movant's assertion that he was innocent.  (Doc. 1 at 17, 31.)  Movant claims that cell phone records, surveillance footage, and statements from witnesses would have supported a defense that he was somewhere else when the alleged crime was committed. (Doc. 1 at 31.)  Movant argues that the "legal representation rendered by counsel was not reasonable," and that had counsel investigated evidence related to his claim that he was elsewhere, "it is likely no charges would have remained on which to criminally indict [Movant]."  (*Id.*)  The Supreme Court has stated that in guilty plea cases, when the alleged error of counsel is the failure to investigate, "the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea."  *Hill,* 474 U.S. at 59.   As set forth below, even assuming that counsel's performance was deficient for failing to investigate the evidence to which Movant refers in his motion, Movant's claim fails because he cannot establish prejudice.

Movant has not specified how further investigation would have provided counsel with additional information or evidence that would have changed counsel's advice to Movant.  He states that witnesses could have testified that he was elsewhere when the crimes occurred, but does not specifically identify those witnesses, the nature of their testimony, or whether they would have testified at trial.  (Doc. 1 at 18.)  In his reply, Movant names several witnesses, Ivan Kee, Elliot Bia, Cynthia Bia, and Jack Bencomo, and generally states that they "could have given accounts of [Movant's] whereabouts on

or about the hours of 5-6:00 AM (time approx.) given in [the victim's uncle's] testimony." (Doc. 17 at 2.)  Movant, however, does not allege where he was at the time the crime allegedly occurred, describe the specific nature of the witnesses' alleged testimony, or indicate whether they would have testified at trial.  Thus, the Court cannot conclude that had counsel investigated these witnesses, counsel would have advised Movant differently regarding pleading guilty.

Movant also argues that trial counsel was ineffective for failing to investigate surveillance footage. (Doc. 1 at 20.)  Movant states that surveillance footage from a "gas station" and a "store" would have shown that he was not present when the alleged crime occurred.  (*Id.*)  Movant, however, does not identify his location at the time the crime allegedly occurred, identify the specific businesses or other locations which counsel should have investigated for surveillance footage of Movant, or specify when he was at those locations.  Movant's conclusory allegations regarding surveillance footage are insufficient to establish that trial counsel was deficient for failing to investigate this potential evidence, or to show that there is a reasonable probability that had counsel conducted such an investigation, counsel would have advised Movant differently.

Movant further alleges that trial counsel was ineffective for failing to investigate cell phone records that would have shown he was not present when the crime allegedly occurred.  (Doc. 1 at 21.)  Again, Movant's allegations are conclusory.  He does not allege where he was around the time of the alleged incident or explain why cell phone records would have indicated that he was not at the scene when the alleged crimes were committed.  (*Id.*)  The only evidence in the record regarding the time of the incident is the victim's uncle's statement, which includes his guess that it occurred between 5:00 and 6:00 a.m.  (Doc. 10, Ex. C.)  Thus, the time of the incident was uncertain.  Movant's conclusory allegations regarding cell phone records do not establish that trial counsel was ineffective for failing to investigate cell phone data.

Moreover, despite Movant's own belief that witnesses and other evidence supported his contention that he was not at the scene when the alleged crime occurred,

Movant signed the August 27, 2013 plea agreement and admitted to the factual basis of his guilty plea in writing.  He also admitted the factual basis during the change of plea hearing.  Thus, Movant entered his guilty plea despite his awareness of the existence of potentially exculpatory evidence.   Movant has not shown that there is a reasonable probability that he would have rejected the revised plea agreement and proceeded to trial but for counsel's alleged failure investigate the case.  *See Moore v. Adduci*, 2013 WL 2417947, at *13 (C.D. Cal. May 31, 2013) (finding that petitioner's guilty plea was knowing and voluntary when he was aware of exculpatory evidence at the time he entered his plea); *Brown-Monroe v. McDonald*, 2012 WL 6140408, at *11 (C.D. Cal. Sept. 10, 2012) (petitioner failed to show a reasonable probability that discovery of evidence would have led counsel to change advice to plead guilty when counsel was aware of the facts at the time of petitioner's guilty plea.)  Therefore, Movant's claim of ineffective assistance of counsel based on a failure to investigate fails.

## V.      Allegations Directed at Trial Counsel Victor

The Procedural History section of the § 2255 motion includes several allegations of ineffective assistance directed specifically to trial counsel Victor.  (Doc. 1 at 16-17.)  These allegations are not identified as a separate ground for relief and, with the exception of the failure-to-investigate allegation, are not included in Grounds One or Two.  However, in an abundance of caution, the Court considers these allegations below.

### A.      Failure to Withdraw Plea Agreement and Guilty Plea

Movant asserts that when Victor was assigned, he "immediately" told him "he did not want to take the plea he had signed," that he had signed that plea because his previous attorney had thrust it on him in open court, and that he wanted to go to trial.  (Doc. 1 at 16.)   The record reflects that Victor began representing Movant on April 29, 2013.  (CR Doc. 36.)   Several months later, the district court rejected the plea agreement that Movant had entered on February 6, 2013.  (CR Doc. 41.)  Because the district rejected the February 6, 2013 plea agreement, Movant cannot show that attorney Victor was ineffective for failing to move to withdraw that plea agreement.

Movant also argues that Victor "never filed a motion to withdraw [his] plea." (Doc. 1 at 17.)  Liberally construed, Movant argues that Victor failed to withdraw his guilty plea.  In his motion, Movant does not specify whether he actually instructed Victor to withdraw his guilty plea or when he may have done so.  (*Id.*)  In his reply, Movant expands this claim and asserts that he gave Victor "a handwritten 'motion to withdraw plea' on or about August 27, 2013, which he also had notarized by C.C. Clawson of the C.C.A. in Florence, AZ (which should be shown in a log at the facility) between Aug. 7th and Aug. 26th . . . ."  (Doc. 17 at 7.)  The Court need not consider Movant's allegations that are raised for the first time in his reply.  *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (claim raised for first time in a reply will not be considered).

Moreover, even if Movant gave counsel a handwritten motion to withdraw his guilty plea, Movant's actions during the August 27, 2013 hearing contradict his assertion that he wanted to reject the revised plea offer, withdraw his previous guilty plea, and proceed to trial.  As discussed in Section III, the record reflects that, after the district judge rejected the February 6, 2013 plea agreement, he specifically advised Movant that he could withdraw his guilty plea.  The district judge gave Movant sufficient time and opportunities to withdraw his guilty plea.  On August 27, 2013, Movant pleaded guilty to a revised plea agreement.  The record reflects that Movant's guilty plea pursuant to the revised plea agreement was knowingly, voluntarily, and intelligently entered.  During the August 27, 2013 hearing, the district judge gave Movant an opportunity to address the court, and Movant did not indicate that he desired to withdraw his February 6, 2013 guilty plea, reject the revised plea agreement, and proceed to trial.  *See* Section III.  Accordingly, even assuming Victor was ineffective for failing to file Movant's motion to withdraw his guilty plea, he has not shown that he was prejudiced because, despite his claim that he prepared a written motion to withdraw his guilty plea, Movant proceeded with the August 27, 2013 plea hearing and entered a guilty plea pursuant to revised plea agreement.  Accordingly, this claim of ineffective assistance of counsel fails.

### B.      Failure to Investigate

Movant argues that Victor, like his other attorneys, was ineffective for failing to investigate evidence before advising him to plead guilty.  (Doc. 1 at 17.)   The Court addressed this claim in Section III and does not reiterate that discussion.

### C.      Failure to Argue for Favorable Sentencing Recommendation

Movant also asserts that Victor "ultimately failed to argue for a sentencing recommendation made by the US Probation Officer preparing the PS[]R, which was significantly lower than the sentence [Movant] received." (Doc. 1 at 17.)  Movant does not specifically identify the sentencing recommendation to which he refers.  Petitioner has not supported this claim with argument, citations to legal authority, or citations to the trial record.  Therefore, this claim should be dismissed as unduly vague and conclusory. *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989) (vague or conclusory claims without supporting factual allegations warrant summary dismissal of § 2255 motion); *see also Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("It is well-settled that '[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.'")). Additionally, the PSR recommended a sentence of 150 months' imprisonment (Doc. 12 at 16), and Movant was sentenced to 135 months' imprisonment.   (Doc. 10, Ex. L.) Therefore, this claim lacks merit.

### D.      Failure to File Notice of Appeal

In the procedural history section of his motion and in his reply, Movant asserts that counsel Victor coerced him to plead guilty by promising him that he would file a direct appeal.  (Doc. 1 at 17; Doc. 17 at 11.)  Movant does not include this allegation in either of his grounds for relief.  However, assuming Movant intended to raise this as a claim of ineffective assistance of counsel, the claim fails because as discussed in Section III, Movant confirmed in open court that he entered his guilty plea voluntary, was not pressured to enter his plea, and that he understood the waiver of his right to appeal. (Doc. 10, Ex. K.)

- 20 -

To the extent the motion can be construed as asserting that counsel Victor was ineffective for failing to file a notice of direct appeal — a claim that Movant does not specifically make — Movant waived this claim by waiving his collateral review rights in the August 27, 2013 plea agreement and by confirming that waiver during the plea hearing.  (Doc. 10, Ex. A at ¶ 6 (waiving right to file a collateral attack, including a § 2255 motion); Ex. K at 15-16.)  *See Lewis v. United States*, 2009 WL 4694042, at *4 (D. Ariz. Dec. 4, 2009) (concluding that waiver of collateral review rights in plea agreement waived claim that counsel was ineffective for failing to file a direct appeal).[6]

## VI.   Actual Innocence Claim

In Section VIII of his motion, Movant alleges actual innocence as "cause" to overcome "any potential procedural bar" to this Court's review of claims.  (Doc. 1 at 35.)  When a movant has procedurally defaulted a claim, that claim can be considered in a § 2255 proceeding if the movant demonstrates either "cause" and actual "prejudice," or that the failure to consider his defaulted claims will result in a fundamental miscarriage of justice.  *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *United States v. Frady*, 456 U.S. 152, 167 (1982).  The government has not asserted a procedural bar to review of Movant's claims.  Therefore, he does need to show cause and prejudice or a fundamental miscarriage of justice.

The § 2255 motion, however, could be liberally construed as asserting a freestanding claim of actual innocence based on the DNA test results.  (Doc. 1 at 35.)  The Supreme Court "has not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."  *McQuiggin v. Perkins*, ___U.S.__, 133 S. Ct. 1924, 1931 (2013) (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993)).  Thus, Movant's freestanding claim of actual innocence does not appear to be a recognized claim that is subject to § 2255 review.

---

[6]   Movant's collateral review waiver, however, did not waive his claims that ineffective assistance of counsel rendered his guilty plea involuntary.  *See Washington v. Lampert*, 422 F.3d 864, 870-71 (9th Cir. 2005) (stating that, in the context of § 2255 challenges, the waiver of collateral review rights does not bar ineffective assistance of counsel claims related to plea negotiations).

1    However, the Ninth Circuit has assumed that freestanding actual innocence claims

2    are cognizable in both capital and non-capital cases, and has articulated a minimum

3    standard of proof applicable to such claims. *See Carriger v. Stewart*, 132 F.3d 463, 476

4    (9th Cir. 1997) (en banc).  "[A] habeas petitioner asserting a freestanding innocence

5    claim must go beyond demonstrating doubt about his guilt, and must affirmatively prove

6    that he is probably innocent." *Carriger*, 132 F.3d at 476 (citing *Herrera*, 506 U.S. at

7    442–44 (Blackmun, J., dissenting)).

8    Assuming that Movant properly asserts a freestanding claim of actual innocence in

9    this § 2255 motion, his guilty plea is a relevant factor in determining whether he

10   establishes such a claim and, in this case, his plea undermines his claim. *See Chestang v.*

11   *Sisto*, 522 Fed. App'x. 389, 390 (9th Cir. 2013) (stating that the fact that petitioner

12   pleaded guilty to charges while being represented by counsel, while not outright

13   precluding actual innocence claim, "seriously undermine[d]" petitioner's claim that

14   another committed the crime); *Smith v. Baldwin*, 510 F.3d 1127, 1140 (9th Cir. 2007)

15   (assuming that the gateway actual innocence exception applies in guilty plea context).

16   Movant was aware of the DNA test results several months before he pleaded guilty

17   pursuant to the revised plea agreement in August 27, 2013.  Movant admitted the factual

18   basis underlying his conviction.  (Doc. 10, Ex. A.)  He signed the revised plea agreement

19   that contained the factual basis, and agreed with the factual basis in open court.  (Doc. 10,

20   Exs. A, K.)  Additionally, as discussed in Section IV.A, the government had evidence

21   that connected Movant to the crime even in the absence of a DNA match.  Because

22   Movant admitted the factual basis supporting his conviction, and the government had

23   evidence from which a jury could reasonably conclude that he was guilty, Movant's

24   claim of actual innocence based on the DNA analysis lacks merit.[7]

25

26

27

28       [7]  This claim may also be waived pursuant to Movant's waiver of his collateral
         review rights.

- 22 -

## VII.   Evidentiary Hearing

Movant requests an evidentiary hearing.   Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"   *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration in original) (quoting 28 U.S.C. § 2255).   The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal."   *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (internal quotation marks omitted); *see also United States v. Withers*, 638 F.3d 1055, 1062–63 (9th Cir. 2011).   To warrant a hearing, therefore, the movant must make specific factual allegations which, if true, would entitle him to relief.   *Withers*, 638 F.3d at 1062; *McMullen*, 98 F.3d at 1159. Conclusory assertions in a §2255 motion are insufficient to require a hearing.   *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).   Because the motion, briefing, and records of the underlying criminal case conclusively show that Movant is not entitled to relief, the Court concludes that an evidentiary hearing is not required.   *See Blaylock*, 20 F.3d at 1465.

## VIII.  Conclusion

As set forth above, the record in this case establishes that Movant knowingly and voluntarily entered a guilty plea pursuant to the revised plea agreement.   The § 2255 motion should be denied because Movant's claims lack merit.

Accordingly,

**IT IS RECOMMENDED** that the Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed in forma pauperis on appeal be **DENIED** because Movant has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.  The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72.  The parties have fourteen days within which to file a response to the objections.  Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Fed. R. Civ. P. 72.

Dated this 2nd day of December, 2015.

Bridget S. Bade
United States Magistrate Judge